# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

DAVID W. BROWN,

               Plaintiff,

        v.

WASHINGTON METROPOLITAN AREA
TRANSIT AUTHORITY,

               Defendant.

Civil Action No. 19-cv-2853 (BAH)

Chief Judge Beryl A. Howell

## <u>MEMORANDUM OPINION</u>

Plaintiff David Brown initiated this lawsuit in D.C. Superior Court after his two requests for documents from the defendant, Washington Metropolitan Area Transit Authority ("WMATA"), were closed when plaintiff did not accede to defendant's demand that he clarify his requests. Notice of Removal, ECF No. 1, Att. 1 ("Compl.") ¶¶ 6, 9, 25, 27, ECF No. 1-1. In addition, defendant refused to classify plaintiff as a "representative of the news media," which classification is necessary to limit the fees WMATA could have charged him to produce the documents he requested. *Id.* ¶¶ 18, 37; WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, PUBLIC ACCESS TO RECORDS POLICY ("PARP") § 8.2 (2019).[1] Defendant removed the case to this Court, *see* Notice of Removal, and has now moved to dismiss the complaint, Def.'s Mot. to Dismiss or, in the Alternative, for Summary Judgment ("Def.'s Mot."), ECF No. 8, for lack of jurisdiction and failure to state a claim upon which relief can be granted, or alternatively, for summary judgment, pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6) and 56. *See generally* Def.'s Mem. of Points and Auths. in Support of Def.'s Mot.

---

[1] The PARP may be found at: http://www.wmata.com/about/records/public_docs/upload/PI-209-203_Public-20Access-20to-20Records_FINAL-2001-2017-202019.pdf.

("Def.'s Mem."), ECF No. 8.  Plaintiff opposes defendant's bricolage motion and seeks partial

summary judgment on his claims that WMATA unlawfully refused to categorize him as a

representative of the news media.  *See* Pl.'s Cross-Motion for Partial Summary Judgment ("Pl.'s

Mot."), ECF No. 14.  As explained below, defendant's motion is granted in part and denied in

part, while plaintiff's motion for partial summary judgment is denied in whole.  Specifically, the

defendant properly closed one of plaintiff's two requests and is therefore entitled to summary

judgment on that claim, but improperly closed the other, for which defendant's motion for

summary judgment is therefore denied.  Plaintiff's challenge to defendant's failure to classify

him as a news media representative for fee purposes with respect to his one surviving request is

dismissed because plaintiff has failed to allege facts that he is entitled to the reduction in fees he

seeks.

## I.    BACKGROUND

On January 27, 2019, plaintiff requested three WMATA handbooks pursuant to that

agency's Freedom of Information Act ("FOIA") equivalent, the Public Access to Records Policy.

Decl. of Lynn Bowersox ("Def.'s Decl."), Att. A ("Handbook Request") at 11, ECF No. 8-1[2];

Def.'s Statement of Material Facts ("Def.'s Statement of Facts") ¶ 1, ECF No. 8[3]; *see also* PARP

§ 1.0 (explaining that WMATA "interpret[s] and appl[ies] [PARP] consistent with the federal

[FOIA]").  He sought handbooks related to "Metrorail safety rules and procedures," "Metrorail

station standard operating procedures," as well as the employee handbook for WMATA's

Department of Bus Service.  Def.'s Decl., Att. B ("Def.'s Resp. to Handbook Request") at 13,

---

[2]       Several documents are attached to the declaration of Lynn Bowersox, WMATA's Senior Vice President for
Customer Service, Communications, and Marketing.  Since the declaration and its attachments were compiled in one
document, for ease of review, citations to these attachments are made using the pagination assigned by the Court's
Case Management-Electronic Case File ("CM-ECF") system.
[3]       Plaintiff has admitted or does not dispute the vast majority of the facts listed in defendant's Statement of
Facts.  *Compare* Def.'s Statement of Facts *with* Pl.'s Resp. to Def.'s Statement of Facts, ECF No. 13.  Where
necessary, disputes between the parties over factual issues will be pointed out.

ECF No. 8-1 (capitalization altered). In the request, plaintiff stated that he was "a recognized representative of the news media," had written two books, and was a "regular contributor" to magazines like The Atlantic and The Week. Handbook Request at 11. As a result, plaintiff did "not expect to be assessed any fees" in association with his request because, he asserted, such fees are limited to "duplication fees pursuant to Section 8.2 of the PARP." *Id.*; *see also* PARP § 8.2 ("Fees shall be limited to the charges for copying when records are not sought for commercial use and the request is made by . . . a representative of the news media.").

The defendant responded on February 13, 2019, and informed plaintiff that his request, as written, was "unduly burdensome." Def.'s Resp. to Handbook Request at 13. As defendant explained, the requested handbooks contained "detailed information regarding matters . . . that would compromise the safety of WMATA's customers, equipment and facilities if released to the public," including, for example "how to release brakes, silent alarms, [and] emergency response procedures." Def.'s Resp. to Handbook Request at 13. According to defendant, these materials were exempt from disclosure under PARP. *Id.* Before releasing the handbooks then, sensitive information would have to be redacted, a task defendant estimated would take "approximately 40 hours of staff time" at a cost of $3,681.60. *Id.* Defendant worried that expending those resources on plaintiff's request and others like it would threaten to "reduce [WMATA] to being full-time investigators on behalf of requesters to the detriment of [its] main mission." *Id.* Instead of denying the request outright, however, defendant offered plaintiff the chance to "narrow the scope of [his] burdensome request." *Id.* To this end, defendant provided plaintiff with the title page and the table of contents for each of the requested handbooks, and gave him ten business days, until February 28, to narrow his request or it would be closed. *Id.* at 13–14.

Defendant also notified the plaintiff that whether he was entitled to a "fee waiver . . . as a member of the media" could not be determined. *Id.* In order to decide plaintiff's eligibility for a fee waiver under section 8.2 of PARP, defendant needed more information, namely "a written explanation of the purpose" of the request, "a written affirmation" that plaintiff would "use his editorial skills to generate a news article, or other original media content based on" the requested handbooks, and "[p]roof that [plaintiff] is expected to publish a news article related to the records" requested. *Id.* This information, too, needed to be provided by February 28, 2019, or defendant planned to label plaintiff "a commercial requester for fee categorization purposes." *Id.* Finally, plaintiff was informed that, if he "wish[ed]," he could "appeal WMATA's decision" to defendant's PARP appeal panel. *Id.* at 15.

Plaintiff neither narrowed his request nor provided the additional information defendant sought, Def.'s Statement of Facts ¶ 26, so on March 6, his request was closed, *id.* ¶ 27; Def.'s Decl., Att. C ("Handbook Request Closure") at 19, ECF No. 8-1. Plaintiff did, however, appeal both defendant's "refusal to process [his] request as written" and its "refusal to classify Mr. Brown as a representative of the news media for fee purposes." Def.'s Decl., Att. D ("Handbook Request Appeal") at 25, ECF No. 8-1. On April 3, 2019, his appeal was rebuffed. A panel composed of WMATA's Chief of External Relations, Chief Operating Officer, and Senior Counsel affirmed the initial closure "for the same reasons stated in that decision." Def.'s Decl., Att. E ("Handbook Request Appeal Decision") at 33, ECF No. 8-1. The panel informed plaintiff that he could "appeal [their] decision by seeking injunctive or declaratory relief in any state or federal court in the District of Columbia." *Id.*

On May 18, 2019, plaintiff submitted his second request to defendant, this time looking for "copies of all records of tips, warnings, or related communications sent to the Metro Transit

Police since 1 July 2018 as part of the 'See Something, Say Something' campaign." Def.'s Decl., Att. F ("Tip Request") at 35, ECF No. 8-1. Again, plaintiff did "not expect to be assessed any fees" owing to his journalistic credentials. *Id.* As it had with the first request, on June 5, 2019, defendant asked plaintiff to try again. Defendant pointed out that "customers who communicate tips, warnings, etc. do not generally reference the reasons that they have made contact" and saying whether any particular tip was related to the "See Something, Say Something" campaign would be impossible. Def.'s Decl., Att. G ("Def.'s Resp. to Tip Request") at 37, ECF No. 8-1. If plaintiff did not clarify his request, defendant planned to close it ten business days later, on June 20, 2019. Moreover, defendant repeated its demand for additional information related to plaintiff's intended use of the requested materials in order to determine his eligibility for a fee waiver. *Id.* at 37–38. Plaintiff was given ten days to provide the information or he would be categorized as a "commercial requester" and potentially liable for fees associated with his request. *Id.* at 38. Once more, defendant alerted plaintiff of his right to an administrative appeal. *Id.* at 38–39. Again, plaintiff neither clarified his request nor provided the information defendant requested before June 20, 2019, so the request was closed. Def.'s Statement of Facts ¶ 40; Def.'s Decl., Att. H ("Tip Request Closure") at 42, ECF No. 8-1.

Instead, on July 3, 2019, plaintiff once again appealed. He took issue with what, to his mind, was defendant's narrow focus "on its purported inability to ascertain *why* people made tips." Def.'s Decl., Att. I ("Tip Request Appeal") at 47, ECF No. 8-1. He asserted that no clarification was necessary because it was incumbent on defendant to "interpret[] the request liberally to include all tips . . . about potential security risks" made during the specified time period. *Id.* He also appealed defendant's "determination that [he was] a commercial requester,"

arguing that he had "amply demonstrated that he is a representative of the news media." *Id*. at 52.

Plaintiff's appeal of his second PARP request fared no better than the first. The administrative appeal panel agreed that, as written, plaintiff's request "failed to reasonably describe the records [plaintiff] sought" because defendant had no way of knowing whether a tip was made in response to the "See Something, Say Something" campaign. Def.'s Decl., Att. J ("Tip Request Appeal Decision") at 61, ECF No. 8-1. Moreover, the panel rejected plaintiff's claim that defendant should have liberally construed his request to include all tips made about security risks during the relevant time period. *Id*. According to the panel, "[t]he general requirement to liberally construe requests does not require WMATA to interpret a request more broadly than the description . . . in the request." *Id*. Finally, because defendant "did not assess any fees in connection with [plaintiff's] request," the panel concluded that his appeal of his fee categorization was "moot." *Id*. at 62. Once again, the appeal panel informed plaintiff that he could appeal its decision by filing suit in state or federal court in the District of Columbia. *Id*.

Plaintiff then filed a four-count complaint in Superior Court in the District of Columbia on August 21, 2019. *See generally* Compl. The first and third count allege that defendant improperly closed his Handbook and Tip Requests, respectively. *Id*. at 2–6. The second and fourth counts challenge defendant's refusal to classify him as representative of the news media. *Id*. at 3–7. Defendant removed the case to this Court on September 23, 2019.

## II.    LEGAL STANDARDS

### A.    Rule 12(b)(1)

Federal courts are courts of limited jurisdiction, and "have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Johnson v. Comm'n on Presidential Debates*, 869 F.3d 976, 980 (D.C. Cir. 2017)

(quoting *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986)). To survive a

motion to dismiss under Rule 12(b)(1) the plaintiff thus "bears the burden of invoking the court's

subject matter jurisdiction." *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015) (citing *Lujan v.*

*Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Even when the parties fail to address a

potential jurisdictional defect "by inattention or deliberate choice," because federal courts are

"forbidden . . . from acting beyond [their] authority," *NetworkIP, LLC v. F.C.C.*, 548 F.3d 116,

120 (D.C. Cir. 2008), it is incumbent on courts to "assure [them]selves of the existence of

jurisdiction." *Montrois v. United States*, 916 F.3d 1056, 1060 (D.C. Cir. 2019).

When a jurisdictional skirmish "present[s] a dispute over the factual basis of the court's

subject matter jurisdiction . . . the court must go beyond the pleadings and resolve" any dispute

necessary to the disposition of the motion to dismiss. *Feldman v. F.D.I.C.*, 879 F.3d 347, 351

(D.C. Cir. 2018) (quoting *Phoenix Consulting v. Republic of Angola*, 216 F.3d 36, 40 (D.C. Cir.

2000)). In such situations, the "court may properly consider allegations in the complaint and

evidentiary material in the record," affording the plaintiff "the benefit of all reasonable

inferences." *Id.*; *see also Am. Freedom Law Ctr. v. Obama*, 821 F.3d 44, 49 (D.C. Cir. 2016)

(noting that, "[i]n considering a motion to dismiss for lack of subject matter jurisdiction" courts

"may consider materials outside the pleadings" (quoting *Jerome Stevens Pharm., Inc. v. FDA*,

402 F.3d 1249, 1253 (D.C. Cir. 2005))). Absent "evidentiary offering[s]," *Feldman*, 879 F.3d at

351, however, the Court must seek jurisdictional assurance by accepting as true all undisputed

"factual allegations in the complaint and constru[ing] the complaint liberally," and again

"granting plaintiff the benefit of all inferences that can be derived from the facts alleged." *Am.*

*Nat'l Ins. Co. v. F.D.I.C.*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (internal quotation marks

omitted).

## B.     Rule 12(b)(6)

A motion to dismiss under Rule 12(b)(6) tests whether a "complaint . . . contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Wood v. Moss*, 572 U.S. 744, 757–58 (2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  A claim is facially plausible if it pleads facts that are not "'merely consistent with' a defendant's liability," *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007), but that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *id.*; *see also Rudder v. Williams*, 666 F.3d 790, 794 (D.C. Cir. 2012).  In other words, to survive a 12(b)(6) motion, the factual allegations in a complaint must "nudge[]" the plaintiff's claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 569.

In undertaking the 12(b)(6) inquiry, the Court must consider the whole complaint, accepting all well-pleaded factual allegations as true, "even if doubtful in fact," *id.* at 555, and as in the 12(b)(1) context, granting the plaintiff "the benefit of all inferences that can be derived from the facts alleged," *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979)).  The Court need not accept as true, however, "a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555); *see also id.* at 681 ("[A]llegations [that] are conclusory . . . [are] not entitled to be assumed true.").

## C.     Rule 56

Summary judgment under Rule 56 is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(a). "In FOIA cases," or FOIA-like cases as here,[4] "summary judgment may be granted on the basis of agency affidavits if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith." *Aguiar v. DEA*, 865 F.3d 730, 734–35 (D.C. Cir. 2017) (internal quotation marks omitted) (quoting *Judicial Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 215 (D.C. Cir. 2013)); *see also Students Against Genocide v. Dep't of State*, 257 F.3d 828, 833 (D.C. Cir. 2001) ("[A]n agency is entitled to summary judgment if no material facts are in dispute and if it demonstrates 'that each document that falls within the class requested either has been produced . . . or is wholly exempt from the Act's inspection requirements.'" (quoting *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978)) (alteration in original)). Summary judgment is typically the proper resolution for FOIA cases. *Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011).

District courts are charged with "determin[ing] *de novo* whether non-disclosure was permissible." *Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 777 F.3d 518, 522 (D.C. Cir. 2015). The burden is "'on the agency to sustain its action,' and the agency therefore bears the burden of proving that it has not 'improperly' withheld the requested records." *Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice*, 922 F.3d 480, 487 (D.C. Cir. 2019) (citations omitted) (first quoting 5 U.S.C. § 552(a)(4)(B); and then quoting *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 142 n.3 (1989)). This burden does not shift even when the requester files a cross-motion for summary judgment because "the Government 'ultimately [has] the onus of proving" the documents were not improperly withheld, while the "burden upon the

---

[4]     Defendant "interpret[s] and appl[ies] [PARP] consistent with the federal Freedom of Information Act." PARP § 1.0. The sparse federal caselaw interpreting PARP follows defendant's lead, so this Court will too. *See, e.g., ERG Transit Sys. (USA), Inc. v. Washington Metro. Area Transit Auth.*, 593 F. Supp. 2d 249, 250 & n.2 (D.D.C. 2009) (explaining that PARP is "interpreted in accordance with[] the FOIA").

requester is merely 'to establish the absence of material factual issues before summary disposition of the case could permissibly occur.'" *Pub. Citizen Health Research Grp. v. FDA*, 185 F.3d 898, 904–05 (D.C. Cir. 1999) (quoting *Nat'l Ass'n of Gov't Emps. v. Campbell*, 593 F.2d 1023, 1027 (D.C. Cir. 1978)) (alterations in original).

## III.    DISCUSSION

Plaintiff concedes that if his claims that defendant improperly closed his PARP requests are rejected, his fee categorization complaints need not be addressed.  Pl.'s Reply in Support of Pl.'s Mot. ("Pl.'s Reply") at 4, ECF No. 19 (noting that, if he loses on counts one and three, he "would concede that his fee category is moot").  Those counts, and defendant's bid to have them dismissed for failure to state a claim or, in the alternative, for summary judgment are therefore discussed first.  As noted, defendant improperly closed one of plaintiff's requests and thus plaintiff's complaint concerning his fee categorization with respect to his surviving request must be addressed.  The defendant's assertion that subject matter jurisdiction over the fee categorization claim is lacking is rejected but that claim is nonetheless dismissed because the plaintiff has failed to state a claim upon which relief can be granted.

### A.    Legal and Jurisdictional Backdrop

The metropolitan area of Washington, D.C. extends into both Maryland and Virginia.  As Washington grew, both states and the District understood that they would need to cooperate in order to develop a mass transit system to service the entire capital region.  S. Rep. No. 86-1906, at 4 (1960) (noting the creation of "a joint commission" between the legislatures of Maryland and Virginia and D.C.'s Board of Commissioners "to study passenger carrier facilities and services in the Washington metropolitan area").  After several years of study and negotiation, D.C., Maryland, and Virginia entered into the Washington Metropolitan Area Transit Regulation Compact ("1960 Compact").  *Id*. at 4–5.  Like all interstate compacts, the 1960 Compact needed

10

congressional consent. U.S. Const. art. I, § 10, cl. 3 ("No State shall, without the Consent of Congress . . . enter into any Agreement or Compact with another State."). Congress obliged on September 15, 1960. Virginia, Maryland, D.C. Interstate Compact, Pub. L. No. 86-794, 74 Stat. 1031 (1960) (granting "consent and approval of Congress . . . to the States of Virginia and Maryland and to the District of Columbia to enter into . . . the Washington metropolitan area transit regulation compact").

In 1966, the States and the District amended the 1960 Compact by adding a new Title which created the defendant WMATA and its regulatory structure. Washington Metropolitan Area Transit Regulation Compact Amendment ("1966 Compact Amendment"), Pub. L. No. 89-774, 80 Stat. 1324, 1324–25 (1966); *see also, generally* D.C. CODE § 9-1107.01 ("WMATA Compact"). The WMATA Compact gave defendant the power to "[a]dopt . . . rules and regulations respecting the exercise" of its various authorities over mass transit in the Washington metropolitan area. WMATA Compact art. V, § 12(c). One such regulation is PARP, which announces WMATA's "policy . . . to make official public records, including electronic records, available to the public for inspection and copying to the greatest extent possible" unless those records are "exempted from disclosure." PARP § 1.0. PARP details several exemptions, including, as pertinent here, one for materials that "if released, would compromise the security of the" transit system. *Id.* § 6.1.1.

The policy details the procedures a person must follow in order to secure the disclosure of WMATA's records. *See id.* §§ 7.1-7.13. Along with describing how a request should be made and to whom, *see id.* § 7.1 (requiring requests to be "in writing and sent . . . to [WMATA's] Office of General Counsel"), PARP explains that a request "should describe the Records that are being requested in sufficient detail to enable WMATA to locate them with a

reasonable amount of effort," *id.* § 7.5. If, however, the request does not include "sufficient detail," the "PARP Administrator" must "contact the Requester to advise that the request is insufficient and to identify what additional description is needed." *Id.* The PARP Administrator has twenty days to grant, in part or in whole, or deny the request and must promptly notify the requester of WMATA's decision. *Id.* § 7.9; *see also id.* § 7.10 (creating the twenty-day time limit).

Requesting documents under PARP is not typically free. "Fees are charged for record search, review, and duplication (and any necessary redaction) when records are sought for commercial use." *Id.* § 8.1. Those fees are limited, however, "to the charges for copying when records are not sought for commercial use and the request is made by . . . a representative of the news media." *Id.* § 8.2. Fees may also be reduced or eliminated "if WMATA determines that the disclosure of the information is in the public interest." *Id.* § 8.4. A request for one of these "waiver[s] or reduction[s]" of fees must be in writing, and the PARP administrator "determine[s] whether fees shall be reduced or waived." *Id.* § 8.6. Any fees that are eventually assessed are not due to WMATA until after "receipt or inspection of the" records produced. *Id.* § 8.9.

A requester has the right to appeal WMATA's initial decision to deny a request or a fee waiver to an appeal panel comprising three WMATA officials. *Id.* § 9.1.1 (creating right of administrative appeal for any "denial of a request for records or denial of fee waiver"); *Id.* § 9.1.3 (explaining the appeal panel is made up of WMATA's Chief of External Relations, its General Counsel, and its Assistant General Manager for the Official Custodian or their designees). When, as here, the appeal is denied, the appeal panel must state "the reasons for the denial" and notify the requester of his "right to judicial review" of the decision. *Id.* § 9.1.5(a) & (c).

To secure judicial review, a requester is limited to bringing a "civil action . . . for injunctive relief or a declaratory judgment" to enforce PARP. *Id.* § 9.3.1–2. Although PARP provides that such actions may be brought in "state or federal Court . . . in the District of Columbia . . . without regard to the amount in controversy," *id.* § 9.3.2, the policy itself does not grant this Court jurisdiction. Yet, since WMATA's inception, U.S. District Courts have had "original jurisdiction, concurrent with the courts of Maryland and Virginia, of all actions brought by or against" the agency. *See* 1966 Compact Amendment, 80 Stat. at 1353; *see also* WMATA Compact, art. XVI, § 81 (extending concurrent jurisdiction to the "courts of . . . the District of Columbia").[5] This statutory grant of subject matter jurisdiction is, of course, insufficient to confer jurisdiction on this court absent a constitutional jurisdictional grant. *Bowles v. Russell*, 551 U.S. 205, 212 (2007) (explaining that Congress may create jurisdiction in the federal courts only "[w]ithin constitutional bounds"). The Constitution, however, empowers federal courts to hear "all Cases . . . . arising under . . . the Laws of the United States," U.S. Const. art. III, § 2, cl. 1, and by consenting to the WMATA Compact, Congress transformed that interstate agreement "into federal law under the compact clause." *KiSKA Constr. Corp.-U.S.A. v. Washington Metro. Area Transit Auth.*, 167 F.3d 608, 609 (D.C. Cir. 1999). Insofar as a suit by or against WMATA does not run afoul another bar to federal judicial review, jurisdiction is thus proper.

## B. Plaintiff Exhausted Administrative Remedies

Defendant asserts that this case contains one such bar to judicial review—the plaintiff's alleged "fail[ure] to exhaust administrative remedies for his PARP requests." Def.'s Mem. at 11

---

[5] That same section of the WMATA Compact provides that "[a]ny such action initiated in a State or District of Columbia court shall be removable to the appropriate United States District Court in the manner provided by 28 U.S.C. § 1446." WMATA Compact, art. XVI, § 81.

(capitalization altered). In the FOIA context, this Circuit has noted that the exhaustion requirement "is not jurisdictional because the FOIA does not unequivocally make it so," but "still as a jurisprudential doctrine, failure to exhaust precludes judicial review if the purposes of exhaustion and the particular administrative scheme support such a bar." *Elec. Privacy Info. Ctr. v. I.R.S.*, 910 F.3d 1232, 1238 (D.C. Cir. 2018) (quoting *Wilbur v. CIA*, 355 F.3d 675, 677 (D.C. Cir. 2004)) (internal quotation marks omitted). Under FOIA, dismissal under Rule 12(b)(6) is the proper remedy for a requester's "failure to exhaust administrative remedies." *Hidalgo v. F.B.I.*, 344 F.3d 1256, 1260 (D.C. Cir. 2003).[6]

The "ordinary exhaustion case" is one in which an agency claims that the requester "neglected to file an administrative appeal." *Electronic Privacy Info. Ctr.*, 910 F.3d at 1238; *see also Citizens for Responsibility and Ethics in Washington v. Fed. Election Comm'n*, 711 F.3d 180, 182 (D.C. Cir. 2013) (Kavanaugh, J.) ("As a general matter, a FOIA requester must exhaust administrative *appeal* remedies before seeking judicial redress." (emphasis added)). Given the plaintiff's undisputed filing of two administrative appeals, this is not that type of "ordinary exhaustion case." Defendant takes a different tack by arguing that plaintiff's failure to narrow his request for the three WMATA handbooks and to clarify his request for tips related to the "See Something, Say Something" campaign, means he did not "reasonably describe" the documents he sought, in violation of PARP. Def.'s Mem. at 11–12 (citing PARP § 7.5). In

---

[6] In contrast to the FOIA, under PARP, exhaustion is no mere "jurisprudential doctrine," but is explicitly required by the policy. PARP § 9.2.1 ("A requester must exhaust the administrative appeal process, before seeking judicial review of a denial of request for records or a fee waiver."). PARP explains that "[a] Requester has exhausted his administrative remedies if his request for records or for a fee waiver has been denied and if that denial has been upheld on administrative appeal." *Id.* § 9.2.2. Defendant, however, does not mention, let alone rely on, this regulatory definition of exhaustion. *See* Def.'s Mem. at 11–13. Moreover, defendant's exhaustion argument relies solely on opinions applying the "jurisprudential doctrine" of exhaustion developed by federal FOIA caselaw. *Id.* The Court will thus restrict its analysis to the applicability of that doctrine. In any event, plaintiff likely "exhausted his administrative remedies" for purposes of PARP § 9.2.1: both requests were closed without being fulfilled, and those closures were upheld after he appealed them to WMATA's appeal panel. *See* PARP § 9.2.2.

defendant's view, plaintiff's "[f]ailure to comply with [WMATA's] rules for requesting records" by not responding to its demands for narrowed or clarified document requests is "the equivalent of failure to exhaust administrative remedies."  Def.'s Mem. at 11.

Of course, the plaintiff did respond.  He administratively appealed both request closures within the time limit for such appeals under PARP.  PARP § 9.1.1 (noting that administrative appeals must be filed "within thirty (30) working days of the date of the denial letter"); Handbook Request Closure at 19 (closing handbook request on March 6, 2019); Handbook Request Appeal at 25 (appealing closure of handbook request on March 22, 2019); Tip Request Closure at 42 (closing tip request on July 3, 2019); Tip Request Appeal at 47, 52 (appealing closure of tip request on July 3, 2019).  In each of those appeals, he made clear that he objected to the agency's "refusal to process [the] request[s] as written, as well as its refusal to classify [him] as a representative of the news media for fee purposes."  Handbook Request Appeal at 25; *see also* Tip Request Appeal at 47, 52 (in regard to the Tip Request, explaining that "[i]t was . . . not appropriate for WMATA to insist on 'clarification' of an already reasonably described request" and taking issue with defendant's "determination that Mr. Brown is a commercial requester").

Defendant has pointed to no case which adopts its theory of exhaustion that a requester's failure to narrow or clarify a request when asked amounts to a failure to exhaust, irrespective of a subsequent administrative appeal.  Def.'s Mem. at 11–12 (citing *DeBrew v. Atwood*, 792 F.3d 118, 123 (D.C. Cir. 2015); *Vest v. Dep't of the Air Force*, 793 F. Supp. 2d 103, 112 (D.D.C. 2011); *Wilson v. Dep't of Transp.*, 730 F. Supp. 2d 140, 152 (D.D.C. 2010); *Dale v. IRS*, 238 F. Supp. 2d 99, 104 (D.D.C. 2002)).  Instead, the defendant relies on cases where the requesters did not file an administrative appeal.  *DeBrew*, 792 F.3d at 123 ("There is no evidence in the record

that DeBrew . . . appealed [BOP's] determination."); *Vest*, 793 F. Supp. 2d at 112 (noting, with respect to each request the Court determined was unexhausted, "[t]here is no indication . . . that the plaintiff . . . took any further action" after the agency requested additional information); *Wilson*, 730 F. Supp. 2d at 151 ("Mr. Wilson did not in fact file an administrative appeal."); *Dale*, 238 F. Supp. 2d at 102 (stating that, after the agency requested additional information and a clarification of his request, "Dale did not respond" and instead filed suit "[e]ight months later").

Defendant's reliance on *DeBrew* is illustrative of the broader error it makes in its understanding of exhaustion. There, a federal inmate requested documents from the Bureau of Prisons ("BOP"). *DeBrew*, 792 F.3d at 123. The BOP informed him that "his request did not adequately describe a document and advised him either to submit a more precise request or to resubmit his request if he disagreed with the agency's determination." *Id*. The inmate neither clarified his request, nor resubmitted his initial request. *Id*. Most importantly, he did not file an administrative appeal. *Id*. at 123–24. This particularly concerned the *DeBrew* court because judicial intrusion in a FOIA dispute "without benefit of prior . . . consideration" by an agency's FOIA appeal panel "would undercut the purposes of exhaustion." *Id*. at 124 (quoting *Hidalgo*, 344 F.3d at 1259). Those purposes "include 'preventing premature interference with agency processes, . . . afford[ing] the parties and the courts the benefit of [the agency's] experience and expertise, . . . [and] compil[ing] a record which is adequate for judicial review." *Elec. Privacy Info. Ctr.*, 910 F.3d at 1239 (quoting *Hidalgo*, 344 F.3d at 1259) (alterations in original).

By contrast, the D.C. Circuit determined in a recent case that a requester's suit could not be dismissed for failure to exhaust in a factual scenario similar to the instant one. In *Electronic Privacy Information Center v. I.R.S.*, the I.R.S. notified a requester that his request had been

"closed as incomplete." *Id.* (internal quotation marks omitted). The requester then "faxed the IRS a letter constituting an appeal and renewed" its request. *Id.* (internal quotation marks and alteration omitted). The I.R.S. responded by "again reject[ing] [the requester's] arguments." *Id.* According to the D.C. Circuit, that response "manifest[ed] that the administrative process had run its course." *Id.* The court explained that, because the requester had given the I.R.S. the "opportunity to reconsider its position and bring its expertise to bear," the suit was not barred by the exhaustion doctrine. *Id.* (citing *Oglesby v. United States Dep't of the Army*, 920 F.2d 57, 64 (D.C. Cir. 1990)).

Just as in that case, plaintiff's administrative appeal gave defendant "the opportunity to reconsider its position and bring its expertise to bear" and ensured that judicial review was not "premature." *Id.* The absurdity of the notion that a requester might fail to exhaust administrative remedies even after filing an administrative appeal is illustrated by the consequences such a regime might produce. Under defendant's theory, an agency need only assert that a request is insufficiently clear or narrow in order to put a requester into an impossible bind. If he disagrees, and administratively appeals that determination, he will never be able to secure judicial review. If he chooses to narrow his request despite his objection, he may concede that his initial request was too broad or vague for purposes of later court proceedings. *See, e.g., Wilson*, 730 F. Supp. 2d at 152 (explaining that once a requester "agree[s] to [an] interpretation" of his request proposed by the agency, he "cannot . . . argue that he meant something else"). Were defendant's position accepted, the exhaustion doctrine would be transformed from a shield that gives administrative processes necessary breathing room into a hermetic seal that would forever preclude judicial review.

In any event, creation of such a strict exhaustion regime would be particularly odd in this case. Defendant's responses to both requests instructed plaintiff that if he "wishe[ed] to appeal WMATA's decision" he could "file a written appeal of the action . . . within 30 business days of the date of this decision letter." Def.'s Resp. to Handbook Request at 15; *see also* Tip Request at 38–39 (same). In fact, when plaintiff chose that route and was rebuffed, defendant's appeal panel informed him that he could "appeal [its] decision by seeking injunctive or declaratory relief in any state or federal court in the District of Columbia." Handbook Request Appeal Decision at 33; *see also* Tip Request Appeal Decision at 62 (same). Plaintiff can hardly be blamed for believing that he adequately pursued his rights under PARP within the agency and for turning to the courts for resolution when the agency itself told him "that the administrative process had run its course." *Electronic Privacy Info. Ctr.*, 910 F.3d at 1239. Plaintiff's administrative appeals of the closure of his requests fully exhausted his administrative remedies.

### C. Plaintiff's Handbook Request Was Improperly Closed, but His Tip Request Was Properly Closed

Defendant insists that "[e]ven if Plaintiff had exhausted his administrative remedies, his challenges to WMATA's closure of his PARP requests should be dismissed under Rule 12(b)(6) or, in the alternative, summary judgment should be entered on the claims in favor of WMATA." Def.'s Mem. 13. Passing on that argument requires consideration of "matters outside the pleadings," so defendant's motion "must be treated as one for summary judgment under Rule 56." FED. R. CIV. P. 12(d).

#### 1. *Plaintiff's Handbook Request Is Not Unreasonably Burdensome*

PARP, like FOIA, requires a requester to "describe the Records that are being requested in sufficient detail to enable WMATA to locate them with a reasonable amount of effort." PARP § 7.5; *see also* 5 U.S.C. § 552(a)(3)(A) (requiring disclosure under FOIA when a request

18

"reasonably describes . . . records" sought). Unless the records are exempt from disclosure,

PARP requires the disclosure of all records that are the subject of a sufficiently detailed request.

PARP § 1.0 ("It is the policy of [WMATA] to make official public records . . . available to the

public for inspection and copying to the greatest extent possible unless exempted from

disclosure."); *id.* § 6.2 (explaining that non-exempt portions of requested records "shall be

provided to any person requesting such record"). When, however, a request fails to provide a

reasonable description of the records it seeks, the agency's disclosure obligation is not triggered.

*See, e.g., Ctr. for the Study of Servs. v. United States Dep't of Health and Human Servs.*, 874

F.3d 287, 288 (D.C. Cir. 2017) ("A request that 'reasonably describes' the records sought . . .

triggers the agency's obligation to search for and disclose all responsive records" (quoting 5

U.S.C. § 552(a)(3)(A)) (citation omitted)). The D.C. Circuit has explained that "a request that

requires 'an unreasonably burdensome search'" does not reasonably describe the records sought

and, therefore, the "agency need not honor" it. *Am. Fed'n of Gov't Emps. v. Dep't of Commerce*,

907 F.2d 203, 209 (D.C. Cir. 1990) (quoting *Goland*, 607 F.2d at 353 (D.C. Cir. 1978)); *see also*

*Schrecker v. U.S. Dep't of Justice*, 349 F.3d 657, 664 (D.C. Cir. 2003) ("[T]here are limits to the

lengths to which an agency must go in responding to a FOIA request.").

Defendant contends that plaintiff's Handbook Request need not be honored, not because

it would require an "unreasonably burdensome *search*," *Goland*, 607 F.2d at 353 (emphasis

added), but because the redactions necessary to *produce* the three requested handbooks would be

unreasonably burdensome. After all, as plaintiff puts it, "WMATA has already located the

records" related to plaintiff's Handbook Request and there is thus "no more search to perform."

Pl.'s Mem. of Points and Auths. in Opp'n to Def.'s Mot. and in Support of Pl.'s Mot. ("Pl.'s

Mem.") at 8, ECF No. 14.[7]  This Circuit has, however, considered the burden that production of

requested documents would impose on an agency in determining whether an agency response

was required.  *See, e.g., Am. Fed'n of Gov't Emps.*, 907 F.2d at 209 (finding a request

unreasonably burdensome when it "would require the agency to locate, review, redact, and

arrange for inspection a vast quantity of material"); *see also Inst. for Justice v. I.R.S.*, 941 F.3d

567, 570 (D.C. Cir. 2019) (noting that agencies must disclose all non-exempt records "subject, as

always, to limits aimed at protecting agencies from undue burdens"); *Long v. Immigration and

Customs Enf't*, 149 F. Supp. 3d 39, 55–56 (D.D.C. 2015) (collecting cases); *but see Kwoka v.

I.R.S.*, No. 17-cv-1157, 2018 WL 4681000, *5 (D.D.C. Sept. 18, 2018) (merely assuming that the

labor necessary to "review[] an already-identified set of documents" could qualify as an

unreasonable burden).

An agency refusing to act on a document request owing to the burden production might

entail must provide a "sufficient explanation as to why such a search would be unreasonably

burdensome."  *Nation Magazine, Washington Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 892

(D.C. Cir. 1995).  In an attempt to satisfy this requirement, defendant submitted the declaration

of its Senior Vice President for Customer Service, Communications, and Marketing, Lynn

Bowersox.  Def.'s Decl. ¶ 1.  To support the notion that production of the requested handbooks

would be overly burdensome, she described the manuals as "span[ning] 1212 pages total," *id*.

¶ 19, and containing sensitive security information ("SSI"), *id*. ¶ 16, which is exempt from

disclosure under PARP, PARP § 6.1.1 (exempting SSI "that if released, would compromise the

security of" WMATA's trains, buses, infrastructure, or the customers who use them).  To

determine the cost of redacting the SSI contained in the three manuals, defendant had two of its

---

[7]        Plaintiff filed the same memoranda at both ECF No. 13 and ECF No. 14.  For ease of reference, only the
document docketed at ECF No. 14 is referenced.

employees, one from the Metro Transit Police Department ("MTPD") and one from its Department of Safety & Environmental Management ("SAFE"), review portions of the manuals to determine how much redaction would be required. Def.'s Decl. ¶ 20. The SAFE official "estimated that to review and redact all three manuals would take approximately 20 hours." *Id*. ¶ 21. The MTPD official estimated she would need "35–40 hours to review and redact SSI in the three manuals." *Id*. Although defendant conservatively estimated the total time for review and redaction would be 40 hours at a cost of $3,681.60 in response to plaintiff's request, *id*. ¶ 22, Bowersox now maintains that the total time necessary is more along the lines of 55–60 hours, *id*. ¶ 23.[8] Bowersox describes defendant as "a relatively small agency with limited staffing resources." *Id*. ¶ 24. While employees "assist [WMATA's] counsel in responding to PARP requests," they do so "in addition to their regular job responsibilities." *Id*. The review and redaction of the requested manuals would, according to Bowersox "require the equivalent of a WMATA employee diverting attention from his/her other responsibilities for a total of approximately . . . 1.5 weeks." *Id*.

While conceding that the manuals are 1212 pages in length, Pl.'s Resp. to Def.'s Statement of Facts ¶ 14, the plaintiff neither admits nor denies the other facts Bowersox describes regarding the alleged burden redaction would require, *id*. ¶¶ 11–13, 15–22. Instead, he argues that, because the burden associated with the redaction of these manuals pales in comparison to cases in which a search was found to require an undue burden, even "the most generous estimate proffered by WMATA" for how long redaction will take could not be considered unreasonably burdensome. Pl.'s Mem. at 9. As noted above, the agency bears the burden of showing not just that fulfilling a request would impose a burden, but that the burden

---

[8] The declaration does not adjust defendant's estimate of the cost of the review, which cost may proportionally be approximately fifty percent higher than its original estimate, or around $5,500.

would be *unreasonable*. Courts have thus condoned an agency's refusal to fulfill a request when redacting the requested documents "would take more than 8,000 hours," *Ayuda, Inc. v. Federal Trade Comm'n*, 70 F. Supp. 3d 247, 275 (D.D.C. 2014), or when a response would require poring over "five terabytes" of data, *Long*, 149 F. Supp. 3d at 56. On the other hand, a document review that "would require almost 2,200 hours of work" was found not to be unduly burdensome. *Kwoka*, 2018 WL 4681000 at *5.

Plaintiff has the better argument. Defendant chose to enact PARP in order to instantiate its commitment to making its records "available to the public . . . to the greatest extent possible." PARP § 1.0. Yet, as the *Kwoka* court pointed out, an agency concerned that a request will consume its employees' attention could develop a production schedule that limits the number of hours those employees are permitted to spend on the request in a given week. *Kwoka*, 2018 WL 4681000 at *5. Although Bowersox's declaration makes clear that the plaintiff's Handbook Request will impose a burden on defendant, nothing in the record suggests that burden will be unreasonable. Defendant's motion for summary judgment on plaintiff's Handbook Request is therefore denied.

### 2. *Plaintiff's Tip Request Was Insufficiently Clear*

Defendant also contends that plaintiff's Tip Request ran afoul PARP's command that a request must "describe the Records that are being requested in sufficient detail." PARP § 7.5. As a reminder, plaintiff's Tip Request sought "all records of tips, warnings, or related communications sent to the Metro Transit Police since 1 July 2018 as part of the 'See Something, Say Something' campaign." Tip Request at 35. In response, defendant requested clarification, explaining that "customers who communicate tips . . . do not generally reference the reasons that they have made contact." Def.'s Resp. to Tip Request at 37. Defendant asserts

that plaintiff failed to provide that clarification and that his original request was not made with "sufficient particularity." Def.'s Mem. at 16 (quoting *Judicial Watch, Inc. v. Dep't of State*, 177 F. Supp. 3d 450, 456 (D.D.C. 2016)).

Plaintiff has two responses. First, he claims that the defendant was required to "liberally" construe his request as not simply for tips related to the "See Something, Say Something" campaign, but as one for all tips expressing security concerns since July 1, 2018. Pl.'s Mem. at 10–11; Compl. ¶ 31. In addition, according to the plaintiff, he *did* clarify his initial request when he filed his administrative appeal. In that appeal, plaintiff expressed his frustration with defendant's choice "to focus narrowly on its purported inability to ascertain *why* people made tips instead of interpreting the request liberally to include all tips made to security about potential security risks." Tip Request Appeal at 47. Plaintiff seems to contend that, once he alerted defendant that he intended to request "all tips" regarding security risks during the relevant time period, the defendant was required to deal with that request, no matter its confusion about his request's initial phrasing. Pl.'s Mem. at 11–12.

Defendant seems to concede that PARP's insistence that requests be stated "in sufficient detail," although different in syntax, is indistinguishable from FOIA's requirement that a request "reasonably describe[]" the records sought. Def.'s Mem. at 15–16 (citing, *e.g.*, *Judicial Watch, Inc.*, 177 F. Supp. 3d at 456 (interpreting FOIA's "reasonably describes" language). As noted above, whether a request contains a reasonable description of the records sought is important because such a description is necessary to trigger an agency's search and disclosure obligations. *Ctr. for the Study of Servs.*, 874 F.3d at 288. FOIA caselaw has long been clear that "a request reasonably describes records if the agency is able to determine precisely what records are being requested." *Inst. for Justice*, 941 F.3d at 572 (internal quotation marks omitted) (quoting

*Kowalczyk v. U.S. Dep't of Justice*, 73 F.3d 386, 388 (D.C. Cir. 1996)).  Despite the requester's

obligation to state what he wants with reasonable accuracy, the D.C. Circuit "has often repeated

that an agency 'has a duty to construe a . . . request liberally.'"  *Id.* (quoting *Nation Magazine*, 71

F.3d at 890); *see also Public Emps. For Envtl. Responsibility v. U.S. Envtl. Prot. Agency*, 314 F.

Supp. 3d 68, 74 (D.D.C. 2018) ("[A]gencies may not use the 'reasonably describes' requirement

to deny the public access to responsive records.").  At the same time, "the agency is not required

to speculate about" what documents the requester seeks.  *Kowalczyk*, 73 F.3d at 389.  In

determining the scope of its search obligation, an agency "is not obliged to look beyond the four

corners of the request."  *Id.*  The agency is merely required to "use 'some semblance of common

sense' in interpreting . . . requests."  *Pinson v. U.S. Dep't of Justice*, 70 F. Supp. 3d 111, 121

(D.D.C. 2014) (quoting *Dale*, 238 F. Supp. 2d at 105).  FOIA caselaw thus strikes a balance

between preventing requesters from forcing agencies to entertain overly broad or vague requests

and the reality that requesters will most often not be familiar with "where or how the agency

stores" its records.  *Inst. for Justice*, 941 F.3d at 572.

As to plaintiff's first argument—that defendant failed to give his request a sufficiently

liberal interpretation—the law is well settled that in construing a request, an agency "is not

required to divine a requester's intent."  *Landmark Legal Found. v. E.P.A.*, 272 F. Supp. 2d 59,

64 (D.D.C. 2003) (citing *Kowalczyk*, 73 F.3d at 388).  Defendant's interpretation of plaintiff's

request as one for "communications to MTPD that were made because of the See Something[,]

Say Something campaign" was perfectly reasonable since that was how the request was framed.

Def.'s Reply in Support of Def.'s Mot. and in Opp'n to Pl.'s Mot. ("Def.'s Reply") at 5, ECF No.

18[9]; *see also* Tip Request at 35 (requesting records of communications made "as part of the 'See

---

[9]       Defendant submitted the same memorandum as both its reply in support of its motion to dismiss or,
alternatively, for summary judgment, and its memorandum in opposition to plaintiff's cross-motion for summary

Something, Say Something' campaign").  This request, on its face, was limited to records related to the See Something, Say Something campaign and the agency was under no obligation to broaden that scope.  *Cf. Kowalczyk*, 73 F.3d at 389 (explaining that when a request is made for records from one office, the agency need not produce potentially responsive records from another office and "may reasonably infer that the requester . . . does not want them").  Put another way, defendant was not required to "look beyond the four corners of the request" in interpreting it.  *Id.*  Furthermore, the general requirement to construe document requests liberally did not prevent defendant from seeking clarification of a request it could not in good faith understand or fulfill.

Plaintiff's second argument likewise fails.  The D.C. Circuit has stated that once "[a] reasonable effort to satisfy [a] request" has been made, the agency is under no "obligation to search anew based upon a subsequent clarification" made in an administrative appeal.  *Id.* at 388. Defendant made that reasonable effort when, after explaining that "customers who communicate tips, warnings, etc. do not generally reference the reasons that they have made contact," it sought clarification of the plaintiff's request per its regulations.  Def.'s Resp. to Tip Request at 37; *see also* PARP § 7.5 ("If the PARP administrator determines that the request does not reasonably describe WMATA Records, the PARP Administrator shall contact the Requester to advise that the request is insufficient and to identify what additional description is needed.").  Plaintiff failed to provide any clarification until after his request was closed.  Compl. ¶ 29.  His "subsequent clarification" in his notice of appeal, such as it was, did not require WMATA to restart the PARP process for his reformulated request.  *Kowalczyk*, 73 F.3d at 388.  After all, the plaintiff has the

---

judgment, *compare* ECF No. 17 *with* ECF No. 18, and only the document docketed at ECF No. 18 will be referenced.

"responsibility to frame [his] own . . . request with sufficient particularity." *Judicial Watch, Inc.*, 177 F. Supp. 3d at 456.

Although defendant may have efficiently remanded plaintiff's appeal to the PARP administrator upon learning the true nature of plaintiff's request, at this stage in evaluating plaintiff's claim, the focus must be on the original request, for that is what determines defendant's search and disclosure obligations. *Kowalczyk*, 73 F.3d at 389. Defendant has submitted evidence that, absent clarification, the agency would not be able to fulfill that request. Def.'s Decl. ¶ 27. The Tip Request did not allow "the agency . . . to determine precisely what records [were] being requested," and therefore did not reasonably describe what plaintiff sought. *Inst. for Justice*, 941 F.3d at 572. The plaintiff's Tip Request did not trigger defendant's obligation to search for responsive records and its closure was thus proper. Plaintiff may, of course, file another PARP request seeking "all tips made to security about potential security risks" made after July 1, 2018, but he may not jump the line by way of a subsequent clarification after defendant made a reasonable effort to obtain clarification before it closed his request. Defendant is thus entitled to summary judgment on plaintiff's claim that the Tip Request was improperly closed.

### D. Plaintiff's Fee Categorization Claims Are Not Moot

Having denied defendant's motion for summary judgment on the plaintiff's Handbook Request, the plaintiff's claim arising out of defendant's refusal to categorize him as a "representative of the news media for fee purposes," Handbook Request Appeal at 25, also survives. The plaintiff seeks partial summary judgment on this claim, while defendant contends that "plaintiff's fee claim[] [is] moot" and that jurisdiction is thus lacking. Def.'s Mem. at 9

(capitalization altered).[10]  Even if not moot, defendant says that plaintiff has failed to state a

claim upon which relief can be granted because plaintiff "failed to demonstrate that he is a

representative of the news media."  Def.'s Mem. at 17.  Plaintiff disagrees and asserts that he

"clearly satisfies [the] lenient standard" for determining whether he is entitled to a reduction in

fees as a member of the news media.  Pl.'s Mem. at 5.

### 1. *Plaintiff's Claims are not Moot*

The Constitution limits the power of federal courts to "cases" and "controversies."  U.S.

Const. art. III, § 2.  The doctrine of "[m]ootness ensures compliance with Article III's case and

controversy requirement by limit[ing] federal courts to deciding actual, ongoing controversies."

*Olu-Cole v. E.L. Haynes Pub. Charter Sch.*, 930 F.3d 519, 530 (D.C. Cir. 2019) (internal

quotation marks omitted) (quoting *Aref v. Lynch*, 833 F.3d 242, 250 (D.C. Cir. 2016) and *Am.

Bar Ass'n v. FTC*, 636 F.3d 641, 645 (D.C. Cir. 2011)).  "[A] case 'becomes moot only when it

is impossible for a court to grant any effectual relief whatever to the prevailing party.'"  *Chafin

v. Chafin*, 568 U.S. 165, 172 (2013) (quoting *Knox v. Serv. Emps.*, 567 U.S. 298, 307 (2012)).

Once a claim is moot, it is "no longer a 'Case' or 'Controversy' for purposes of Article III."

*Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013).  Except in limited circumstances, moot

claims must be dismissed.  *J.D. v. Azar*, 925 F.3d 1291, 1307 (D.C. Cir. 2019); *see also United

States v. Sanchez-Gomez*, 138 S. Ct. 1532, 1540 (2018) (recognizing an "exception to the

mootness doctrine" for issues that are "capable of repetition, yet evading review" (quoting

*Kingdomware Techs., Inc. v. United States*, 136 S. Ct. 1969, 1976 (2016))); *Knox*, 567 U.S. at

307 (recognizing an exception to the mootness doctrine when a defendant's "voluntary cessation

of challenged conduct" causes the issue to become moot).

---

[10]     Plaintiff's fee categorization claim associated with his Tip Request need not be addressed, as that request
was properly closed and plaintiff was not assessed any fees.

The quintessential moot claim is one for which, during litigation, "an intervening circumstance deprives the plaintiff of a personal stake in the outcome of the lawsuit." *J.D.*, 925 F.3d at 1307 (internal quotation marks omitted). For example, *Bowen v. Kizer*, 485 U.S. 386 (1988), began its life as a challenge to a Department of Health and Human Services' policy that had caused the Secretary of that agency to reject an amendment to a California Medicaid plan. *Id*. at 386. After the case was argued before the Supreme Court but before that Court delivered its opinion, Congress changed the law to require the Secretary to accept the amendment. That "development[] . . . rendered the controversy moot." *Id*. at 387. "In other words, mootness doctrine" is invoked when "circumstances [arise] that destroy the justiciability of a suit previously suitable for determination." *Loughlin v. United States*, 393 F.3d 155, 169 (D.C. Cir. 2004) (internal quotation marks and alteration omitted) (quoting 13A CHARLES ALAN WRIGHT, *et al.*, FEDERAL PRACTICE AND PROCEDURE § 3533 (2d ed. 1984)).

Plaintiff's claims fall outside that mootness model. Here, the plaintiff administratively appealed the decision to close his Handbook Request and the decision to classify him as a commercial requester. Def.'s Statement of Facts ¶ 28. When defendant's appeal panel affirmed the agency's initial decision to close the request, there was no need for the agency to consider the propriety of calling plaintiff a representative of the news media. Thus, the request was closed and no fees were assessed. This may have made plaintiff's categorization claim moot in the colloquial sense, but it did not make it moot for purposes of Article III justiciability. *Cf. Security Plans, Inc. v. Cuna Mutual Ins. Soc'y*, 726 F. App'x 17, 20 (2d Cir. 2018) (distinguishing between "mootness in the colloquial sense of the word" and "Article III mootness" that determines a court's jurisdiction). Mootness is only "an issue" if the plaintiff loses his personal stake after "the case has been brought and litigated." *Friends of the Earth, Inc. v. Laidlaw Envtl.*

*Servs. (TOC), Inc.*, 528 U.S. 167, 191 (2000).  Defendant's argument that its conduct prior to this litigation, *i.e.*, refraining from charging plaintiff fees, thus cannot "moot" this case for jurisdiction purposes.[11]

      **2.**      *Plaintiff Fails To State A Claim Upon Which Relief Can Be Granted*

PARP limits the fees charged to a requester "to the charges for copying when records are not sought for commercial use and the request is made by . . . a representative of the news media."  PARP § 8.2.  Again FOIA caselaw provides guidance in determining whether plaintiff met the requirements for reduced fees.  Drawing on FOIA's statutory definition, the D.C. Circuit has announced "five criteria that a requester must satisfy to qualify as a 'representative of the news media.'"  *Cause of Action v. F.T.C.*, 799 F.3d 1108, 1120 (D.C. Cir. 2015).  A requester must "(1) gather information of potential interest (2) to a segment of the public; (3) use its editorial skills to turn the raw materials into a distinct work; and (4) distribute that work (5) to an audience."  *Id*. (citing 5 U.S.C. § 552(a)(4)(A)(ii)).  FOIA's news-media waiver "focuses on the nature of the *requester*, not its request."  *Id*. at 1121 (emphasis in original).  For that reason, so long as a requester "satisfies the five criteria as a general matter," he may be categorized as a representative of the news media.  *Id*.  As with PARP, however, a news media member is not automatically entitled to reduced fees under FOIA.  He must also show that he does not seek the

---

[11]      As the Supreme Court has made clear, the doctrine of mootness is often confused with the doctrine of standing.  *Friends of the Earth*, 528 U.S. at 189.  Defendant's argument might more accurately be described as an allegation that plaintiff has not suffered an "injury in fact" as required for Article III standing.  *Lujan*, 504 U.S. at 560 (internal quotation marks omitted); Def.'s Mem. at 10 ("WMATA never assessed any fees in connection with Plaintiff's PARP Request.").  Plaintiff clearly has standing, however, as his Handbook Request is still a live issue and, despite what he says was a sufficient showing to require categorization as a journalist, he was denied a statutory entitlement to reduced fees once his request is eventually processed.  *See, e.g., City of Houston, Tex. v. Dep't of Housing and Urban Dev.*, 24 F.3d 1421, 1430 (D.C. Cir. 1994) (explaining that a plaintiff who is at risk of being denied a statutory entitlement by a policy of the defendant has standing to challenge such a policy).  Defendant, moreover, has explained that it may still charge the plaintiff fees upon processing his request, so his injury is sufficiently "imminent."  *Lujan*, 504 U.S. at 560; *see also* Pl.'s Mem., Ex. 1 at 1, ECF No. 14-1 (defendant's counsel explaining that "[e]ven if the fee waiver claims were not moot . . . your client failed to submit sufficient information to demonstrate qualification for a fee waiver" and refusing to agree to refrain from charging plaintiff fees).

records "for commercial use." 5 U.S.C. § 552(a)(4)(A)(ii)(II). For example, "[i]f a news-media entity makes the request in its corporate rather than journalistic capacity, the request does not qualify for a fee waiver." *Cause of Action*, 799 F.3d at 1121 n.10 (citing *Nat'l Sec. Archive v. U.S. Dep't of Defense*, 880 F.2d 1381, 1387 (D.C. Cir. 1989)).

Defendant argues that plaintiff has failed both to "demonstrate that he is a representative of the news media," Def.'s Mem. at 17, and to "submit[] . . . information that would support a conclusion that he was not seeking records for commercial use," Def.'s Reply at 10. Plaintiff responds that by advising defendant "that he is a regular contributor to *The Atlantic* and *The Week* magazine, and coauthor" of two books, Compl. ¶ 16 (internal quotation marks omitted), he "demonstrate[d] his right to be classified as a representative of the news media." *Id*. He takes issue with defendant's insistence that he was required to submit "a written affirmation . . . that he will use his editorial skills to generate a news article, or other original media content based on the records" he requested and "[p]roof that [he] is expected to publish a news article related" to those records. *Id*. ¶ 17 (internal quotation marks omitted). He believes "neither the PARP nor FOIA require" such submissions. *Id*. ¶ 19. As to defendant's assertion that plaintiff failed to show he was eligible for reduced fees because he did not provide information about whether the purpose of his request was commercial, plaintiff claims that he "did not request a fee waiver." Pl.'s Mem. at 2. Instead, he somewhat confusingly states that he merely seeks "classification as a representative of the news media for fee purposes, which entitles him to a reduced fee schedule." *Id*. This, he says, "is a distinct legal and factual issue from a fee waiver request." *Id*.

Plaintiff's assertion that he did not request a fee waiver is either purely semantic or evinces a misunderstanding of what actually "entitles [a requester] to a reduced fee schedule."

*Id.*[12]  As noted above, status as a "representative of the news media" is necessary but not sufficient to obtain reduced fees.  News media only pay less than the general public when the records they request "are not sought for commercial use."  PARP § 8.2.  Defendant attempted to determine whether plaintiff's purpose was commercial when it requested "a written explanation of the purpose of [his] request and his intended use of the requested records."  Compl. ¶ 17 (internal quotation marks omitted) (alteration in original).  Plaintiff "did not provide any additional information to WMATA because" he believed "neither the PARP nor FOIA require[d]" such submissions.  *Id.* ¶ 19.

Plaintiff may be correct that defendant went too far in asking him for "proof" that he planned to use his journalistic skills to produce content "based on the records" he requested.  *Id.* ¶ 17.  After all, *Cause of Action* made clear that a requester need only "satisf[y] the five criteria as a general matter" to be labeled a news media representative.  *Cause of Action*, 799 F.3d at 1121.  Nevertheless, the plaintiff submitted no information about whether his request was commercial in nature, and therefore has failed to allege facts that could "allow[] the court to draw the reasonable inference" that he is entitled to reduced fees.  *Iqbal*, 556 U.S. at 678.

Insofar as plaintiff pursues only a declaration that he is a representative of the news media, PARP does not create a right to such a declaration.  To the extent that plaintiff faces an imminent injury, this injury would arise only from defendant's failure to abide by PARP's news-media fee waiver provision.  Thus, while a court may be able to opine on whether an agency properly classified an individual, it can do so only in service of a properly alleged claim for a fee waiver.  *Cf. Cause of Action*, 799 F.3d at 1120 ("The news-media fee waiver applies only to

---

[12]     The Court fails to see the difference between entitlement to "a reduced fee schedule" and a "fee waiver."  After all, when fees are reduced, some amount of the ordinary fee has been waived.  In any event, the D.C. Circuit has often called the analogous FOIA provision the "news-media fee waiver."  *See, e.g., Cause of Action*, 799 F.3d at 1120.

records that are not sought for commercial use." (internal quotation marks omitted)).  As with FOIA, "[a] [PARP] requester is entitled only to a fee waiver (where appropriate), not the incident status determination."  *Long v. Bureau of Alcohol, Tobacco, and Firearms*, 964 F. Supp. 494, 498 (D.D.C. 1997).  The plaintiff cannot bring a claim for a status determination alone, and he has failed to allege facts sufficient to support the type of claim cognizable under PARP.  His complaint concerning defendant's refusal to classify him as a representative of the news media must therefore be dismissed.

## IV.     CONCLUSION

Defendant's motion for summary judgment on plaintiff's claim, in count one of the complaint, that closure of the Handbook Request was improper, is DENIED.  Defendant's motion for summary judgment on plaintiff's claim, in count three, that closure of the Tip Request was improper, is GRANTED, and plaintiff's cross-motion for summary judgement on his claim, in count four, that he should have been labeled a news media representative with respect to this Tip Request, is DENIED as moot.  Plaintiff's cross-motion for summary judgment on his claim, in count two of his complaint, that he should have been classified as a representative of the news media with respect to his Handbook Request, is DENIED, and that count is DISMISSED for failure to state a claim.

An order consistent with this Memorandum Opinion will be entered contemporaneously.

Date: February 18, 2020

_____
BERYL A. HOWELL
Chief Judge